UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-80200-CR-MARRA

UNITED STATES OF AMERICA

vs.

RUSSELL HENDERSON MARSHALL,
        Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and

(hereinafter referred to as the "defendant") enter into the following agreement:

1.   The defendant agrees to plead guilty to counts __1 and 2__ of the information, which

counts charge the defendant with;

**Count 1**:      knowingly and willfully engaging in negotiations concerning selling, delivering, or

otherwise servicing a transaction involving an item to be exported from the United States to the

Kingdom of Thailand and subject to IEEPA and the EARs, that is, three (3) temperature

transmitters used on F-16 fighter jets, in violation of a Department of Commerce denial order; all

in violation of Title 50, United States Code, Section 1705(a); Title 15, Code of Federal

Regulations, Sections 736.2(b)(4), 764.2, and 764.3(b)(2); and Title 18, United States Code,

Section 2.

**Count 2**:      knowingly and willfully engaging in negotiations concerning selling, delivering, or

otherwise servicing a transaction involving an item to be exported from the United States to the

Islamic Republic of Pakistan and subject to IEEPA and the EARs, that is, a saddle part for the J-69

engine used on T-37 military trainer aircraft, in violation of a Department of Commerce denial order; all in violation of Title 50, United States Code, Section 1705(a); Title 15, Code of Federal Regulations, Sections 736.2(b)(4), 764.2, and 764.3(b)(2); and Title 18, United States Code, Section 2.

2.   The defendant also agrees to admit the probation violations set forth in the Superseding Petition in case number 11-80058-CR-MARRA as follows:

A.      The defendant admits **Violation 1: Violation of Mandatory Condition**, by failing to refrain from a violation of the law. On or between November 19, 2012, to the present, the defendant did commit the offense of "Violation of the International Emergency Economic Powers Act" (IEEPA) by engaging in business activities involving the export of controlled items in violation of the Order of Debarment issued by the United States Department of Commerce, Bureau of Industry and Security against Universal Industries Limited Inc., in violation of Title 50 U.S.C § 1705(a).

B.      The defendant admits **Violation 2: Violation of Mandatory Condition,** by failing to refrain from violation of the law. On or about December 3, 2012, to on or about January 11, 2013, the defendant did commit the offense of the "Violation of the International Emergency Economic Powers Act" (IEEPA) by engaging in business activities involving the export of controlled items in violation of the Order of Debarment issued by the United States Department of Commerce, Bureau of Industry and Security against Universal Industries Limited Inc. in violation of Title 50 U.S.C. § 1705(a).

3.   The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing

Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4.    The defendant also understands and acknowledges that as to each count of the Information filed in this case, the Court may impose a statutory maximum term of imprisonment of up to   **20**   years, followed by a term of supervised release of up to  **3**  years.   These sentences of imprisonment may be run consecutively, for a total sentence of **40** years imprisonment.   In addition to a term of imprisonment and supervised release, the Court may, as to each count, impose a fine of up to $250,000 ($500,000 for organizations), twice the gross gain, or twice the gross loss.

5.    The defendant further understand and acknowledges that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of  **$100**

3

will be imposed on the defendant for each count, for a total of **$200**.   The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.   If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6.   The defendant acknowledges, understands and agrees that the sentence to be imposed upon his violation of probation in case number 11-80058-CR-MARRA may result in a consecutive sentence.

7.   This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8.      This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the

4

government and the Court to allocate their resources efficiently. This Office further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. This Office, however, will not be required to make this motion and these recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9.     The United States Attorney's Office for the Southern District of Florida agrees that, if the defendant is deemed eligible by the Attorney General or his designee, it will not oppose the defendants request for transfer pursuant to the International Prisoner Transfer Program. The defendant understands that the discretion to grant or deny such transfer requests is vested solely in the Attorney General or his designee, and that the United States Attorney's Office for the Southern District of Florida represents only that it will not oppose the defendant's transfer request.

10.     Defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to law of the United States relating to violating or evading a law prohibiting the export from the United States of goods, technology or sensitive information, removal is presumptively mandatory. Defendant knowingly and voluntarily consents to removal from the United States following completion of his sentence

or upon his transfer pursuant to the International Prison Transfer Program; waives any rights relating to any and all forms of relief from removal; agrees to abandon any pending applications for such relief; and agrees to cooperate with the Department of Homeland Security during removal proceedings.

11.    Defendant agrees that he will execute a Stipulated Request for Judicial Removal.

12.    Defendant stipulates and agrees that, pursuant to Title 8, United States Code, Section 1228(c)(5), the Court shall enter a Judicial Order of Removal from the United States and waives his right to appeal the Judicial Order of Removal.

13.    The defendant understands, stipulates and agrees that upon the completion of his sentence, or upon his transfer pursuant to the International Prisoner Transfer Program, if deemed eligible, he will be remanded to the custody of Immigration and Customs Enforcement to be removed from the United States.

14.    The defendant agrees to pay the cost of his removal from the United States.

15.    The defendant is aware that the sentence has not yet been determined by the Court. The  defendant also is aware that any estimate of  the  probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.   The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a

sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

16.   This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: ___2/6/15___                     By: _____
                                                MICHAEL WALLEISA
                                      ASSISTANT UNITED STATES ATTORNEY

Date: ___2-4-2015___                   By: _____
                                                LEONARD A. SANDS, ESQ.
                                                ATTORNEY FOR DEFENDANT

Date: ___2-4-2015___                   By: _____
                                                RUSSELL HENDERSON MARSHALL
                                                DEFENDANT

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER 14-80200-CR-MARRA


UNITED STATES OF AMERICA

vs.


RUSSELL HENDERSON MARSHALL, and
UNIVERSAL INDUSTRIES LIMITED, INC.,

                    Defendants.
_____/


## STIPULATED FACTUAL BASIS FOR PLEA

1.      The export of "commerce controlled" items are regulated by the United States Department of Commerce (DOC).  Under the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1701 et.seq., the President of the United States was granted the authority to deal with unusual and extraordinary threats to the national security, foreign policy and economy of the United States.  Under IEEPA, the president could declare a national emergency through Executive Orders that had the full force and effect of law.

2.      On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 1322, which declared a national emergency with respect to the unrestricted access of foreign parties to United States goods and technologies and extended the Export Administration Regulations (AEAR@), Title 15, Code of Federal Regulations, Sections 730-774.  Through the EAR, the DOC imposed license or other requirements before an item subject to the EAR could be lawfully exported from the United States or lawfully re-exported from another country.  These items were included on the commerce control list (ACCL), published at Title 15, Code of Federal

Regulations, Section 774, Supp.1.  Items on the CCL were categorized by Export Control Classification Number ("ECCN"), which denoted the applicable export controls.  The President issued annual Executive Notices extending the national emergency declared in Executive Order 1322 from the time period covered by that Executive Order through the time covered by the Information.

3.      Under IEEPA and the EAR, it was a crime to knowingly engage in conduct which is prohibited under any order issued under the EAR; to cause, aid or abet, counsel command, induce, procure or permit the doing of any act prohibited by the EAR or any order issued under the EAR; to conspire to bring about of do any act that constitutes a violation of the EAR; or to take any action that is prohibited by a denial order, in violation of Title 50, United States Code, Section 1705 and Title 15, Code of Federal Regulations, Sections 764.2 and 746.3.

4.      The Department of Defense, Defense Criminal Investigative Service (DCIS), initiated an investigation of UNIVERSAL INDUSTRIES LIMITED Inc., located in the Southern District of Florida, based on a Department of Defense (DoD) Hotline Complaint dated November 15, 2012.

5.      On August 19, 2011, RUSSELL H. MARSHALL was sentenced to three years of probation by Judge Marra in the Southern District of Florida for mis-labeling a package of J85 engine blades as commercial parts valued at $2,000 when he knew the package contained military parts valued at $67,000 destined for Singapore in violation of Title 18, United States Code, Section 1001.

6.      On  August 19, 2011, UNIVERSAL INDUSTRIES LIMITED, INC. was sentenced to one year of probation by Judge Marra in the Southern District of Florida for attempting to ship 200 J85 engine blades without obtaining a license from the Department of State in violation of the Arms Export Control Act, Title 22, U.S.C. §§ 2778(b)(2) and (c).

7.      As a result of this sentencing, UNIVERSAL INDUSTRIES LIMITED, INC. was banned from exporting military use items (Licenses issued by the U.S. Department of State) until August 19, 2012 and dual use items (Licenses issued by the U.S. Department of Commerce) until August 19, 2014.

8.      The decision made by the Department of Commerce as published in the Federal Register Volume 77, Number 151 (Monday, August 6, 2012) provided that:

Until August 19, 2014, UNIVERSAL INDUSTRIES LIMITED, INC., with a last known address of 3050 S.W. 14th Place, Unite 3, Boynton Beach, Florida, when acting on behalf of Universal, its successors or assigns, agents or employees, ("the Denied Person") may not, directly or indirectly, participate in any way in any transaction involving any commodity, software or technology exported or to be exported from the United States that is subject to the Regulation, including carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; benefit in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations.  The order further provided that no person may, directly or indirectly take any action that facilitates the acquisition, or attempted acquisition by the Denied Person of the ownership, possession, or control of any item subject to the Regulations that has been or will be exported from the United States.

## COUNT 1

9.      U.S. Probation Officer Ann Roman, who supervises MARSHALL visited MARSHALL at his place of business, 3050 S.W. 14th Place Unit 3, Boynton Beach, FL on February 22, 2013,

and inquired if he was complying with the terms of his probation.  At that time Christina

VASQUEZ, the Office Manager for UNIVERSAL INDUSTRIES, provided Officer Roman with

a purchase order and quotation for a temperature sensor Part Number 4034T94P02, [National

Stock Number (NSN): 6685-00-208-2898] for Aeromax Industries located in California, who

was ultimately shipping the item to the Royal Thai Air Force.

10.     A review of  the documentation obtained by Probation Officer Roman revealed

RUSSELL HENDERSON MARSHALL and UNIVERSAL INDUSTRIES LIMITED INC.,

were engaged in negotiations to provide a temperature transmitter Part Number 4034T94P02,

(NSN: 6685-00-208-2898) for Aeromax Industries located in California, which was to be

shipped to Thailand by Aeromax Industries for the Royal Thai Air Force.  An email recovered

from discarded trash behind UNIVERSAL INDUSTRIES LIMITED, INC's location in Boynton

Beach, Florida dated November 19, 2012 advised that the temperature transmitter was for the

Royal Thai Air Force and the shipping destination was Thailand.   This email contained a

handwritten notation, "Kamtech System "$3,250".  On November 20, 2012. Universal Industries

Limited, Inc. issued a quotation to Aeromax Industries, Inc., for the sale and delivery of three (3)

temperature transmitters, Part Number 4034T94P02,   (NSN): 6685-00-208-2898 for a price of

$12,675.00.

11.     On February 13, 2013, Aeromax Industries Inc., issued  purchase order number 20234374

to UNIVERSAL INDUSTRIES LIMITED, INC., attention RUSSELL MARSAHLL for the

purchase of three (3) temperature transmitters, Part Number 4034T94P02,  NSN: 6685-00-208-

2898 for a price of $12,828.00 which described the ultimate destination as Thailand and the

ultimate user as the Royal Thai Air Force.

12.    Documentation from Aeromax Industries Inc. showed that: On February 8, 2013, RUSSELL MARSHALL (UNIVERSAL INDUSTRIES LIMITED INC., Sales Department) sent an email to Aeromax industries Inc., advising that the best price they could offer for the temperature transmitters was $4276.30 each.  On July 16, 2013, Aeromax sent an email to RUSSELL MARSHALL inquiring about the status of the delivery of the temperature transmitters under purchase order number 20234374 as it was overdue.  On October 21, 2013, Aeromax Industries Inc. cancelled the order from RUSSELL MARSHALL and UNIVERSAL INDUSTRIES LIMITED INC., because they learned that UNIVERSAL INDUSTRIES LIMITED INC., had been debarred and that UNIVERSAL INDUSTRIES INC., could not sell any parts for export.  As a result of this discovery Aeromax notified the Royal Thai Air Force that they were unable to obtain the temperature transmitters because the supplier (UNIVERSAL INDUSTRIES LIMITED INC.) had been barred from selling controlled items for export.  On December 11, 2013 The Directorate of Aeronautical Engineering, Royal Thai Air Force sent a letter to Aeromax Industries, Inc. advising that the purchasing contract was cancelled and imposing penalties on Aeromax Industries Inc. for the failure to deliver.

13.    Homeland Security Investigations (HIS) Agents obtained a license determination from the United States Department of Commerce, Bureau of Industry and Security (DOC), which shows that Part Number 4034T94P02, Transmitter, Temperature Electric Resistance- NSN 6685-00-208-2898 is a controlled item under ECCN 9A619.x on the CCL for anti-terrorism, national security reasons and regional stability reasons, and required a DOC license for export to Thailand.  Therefore, due to the debarment of UNIVERSAL INDUSTRIES LIMITED, INC, neither UNIVERSAL INDUSTRIES LIMITED, INC, nor RUSSELL HENDERSON

MARSHALL. while acting on behalf of UNIVERSAL INDUSTRIES LIMITED, INC, could be involved in any transaction for the export of the temperature transmitter to Thailand.

### COUNT2

14.    On or about August 13. 2014, search warrants were executed at the residence and business locations of Russell Henderson Marshall and Universal Industries Limited. Inc. Pursuant to the execution of the search warrants numerous business records were seized.

15.    Among the business records seized during the search were documents related to the sale of a "saddle" which was to be used on the T-37 by the Pakistan Air Force.  These documents included purchase orders from SOI Aviation to Universal Industries Limited Inc., and end user statements between SOI Aviation and Universal Industries Limited which showed that the "saddle" was to be exported to the Royal Pakistan Air Force by SOI Aviation which was date 1/8/2013. The end user certification supplied to Universal Industries by SOI Aviation included the export license number that SOI Aviation had obtained for the export of the "saddle".  An end user certificate date 1-9-2013 was also found in which Russell Marshall advised the supplier of the "saddle". Calport Aviation, that the end user of the "saddle" was SOI Aviation in the United States.

16.    Additional documents were obtained from SOI Aviation.  These documents included additional purchase orders and e-mail communications between SOI Aviation and Universal Industries Limited. Inc. related to the "saddle" transaction which showed that Russell Marshall and Universal Industries were aware that the "saddle" was to be exported from the United States by SOI Aviation to the Pakistan Air Force.

17.    Homeland Security Investigations (HIS) Agents obtained a license determination from the United States Department of Commerce, Bureau of Industry and Security (DOC), which

shows that Saddle Part Number 723865-101 was controlled under ECCN No 9A619.x, of the CCL for anti-terrorism, national security, and regional stability reasons, and required a DOC license for export to Pakistan.  Therefore, due to the debarment of UNIVERSAL INDUSTRIES LIMITED, INC, neither UNIVERSAL INDUSTRIES LIMITED, INC, nor RUSSELL HENDERSON MARSHALL, while acting on behalf of UNIVERSAL INDUSTRIES LIMITED, INC, could be involved in any transaction for the export of the temperature transmitter to Pakistan.

## FACTS COMMON to COUNTS 1 AND 2

18.     Records maintained by the Florida Department of State, Division of Corporations show that RUSSELL HENDERSON MARSALL was the Vice President of UNIVERSAL INDUSTRIES LIMITED, INC.  and that UNIVERSAL INDUSTRIES LIMITED, INC. was located within the Southern District of Florida.

19.     The facts set forth in this stipulated factual basis for a plea establish the necessary elements for Counts one and two of the information which charge violations of the International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1702 and 1705, and the Export Administration Regulations (EAR), Title 15, Code of Federal Regulations,

Sections 736.2 and 764.2, by RUSSELL HENDERSON MARSHALL, and UNIVERSAL INDUSTRIES LIMITED, INC.

_____
RUSSELL HENDERSON MARSHALL
Defendant

_____2-6-15_____
Date

_____
LEONARD A. SANDS, ESQ
Counsel for Defendant Marshall

_____2-6-2015_____
Date

_____
MICHAEL WALLEISA
Assistant United States Attorney

_____2/6/15_____
Date

Joseph S Lucia President 2/6/15

Joseph S Lucia
For Universal Inds.

8