UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: l4-80200-CR-MARRA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

**RUSSELL H. MARSHALL,
UNIVERSAL INDUSTRIES LIMITED, INC.,**

        **Defendant.**
_____/

**DEFENDANTS MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC.'s
SENTENCING MEMORANDUM**

**Russell Marshall** & **Universal Industries Limited, Inc.,** by their attorney, submit the following joint **Sentencing Memorandum** to assist the Court in calculation and determination of the appropriate Sentencing Guidelines Score and relevant sentencing factors.[1]

---

[1] Ordinarily, we would not represent more than one defendant in the same criminal case. However, for practical purposes **Universal** has no assets and no longer exists. When it did operate, **Universal** was the vehicle by which **Marshall** worked as an airplane parts broker. He had an absentee partner –**Joseph Lucia**— who did not participate in the business. Since **Marshall**'s arrest on August 19, 2014 on the current charges, **Marshall** has been in custody [DE 11 & DE 16]. As a result, **Universal** closed, stopped doing business, has no assets, and, has been administratively dissolved by the State of Florida.

    Under these circumstances **Universal** and **Marshall** agreed to be represented by the same attorney [DE 36, 37, 38, 39 40, 41, 42]. We submit separate Sentencing Memoranda for **Marshall & Universal** would be duplicative and are not necessary.

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

Objections to the Pre-Sentence Report are submitted separately. Statements from Counsel, the Defendant and letters addressed to the Court from friends and family will also be submitted separately.

In determining a fair, just and not greater than necessary sentence we request the Court consider the following:

1. At the outset, it is now well understood, the Sentencing Guidelines are no longer mandatory, *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005).

2. Nonetheless, at the threshold the Court is still required to determine an *advisory* guideline range. To do that the Court needs to determine the appropriate Guideline applicable in each case. Here, there is genuine disagreement between the parties which guideline sub-section applies (§ 2M5.1(a)(1) or § 2M5.1(a)(2) –and, therefore, where the guideline calculus begins.

3. The parties agree the issue requires an honest, fair determination whether –on its unique facts– the case involves an *evasion* of **export controls.** The government urges defendants' debarment as a result of their prior case (11-80058-CR-Marra) alone constitutes an evasion of 'national security controls.' P. 2, Government's Sentencing Memorandum [DE 53]. We believe the debarment by itself does **not.** Moreover, but for the prior debarment the sales were not prohibited *per se*, were sold to friendly nations, and, the necessary government authorizations were obtained.

2

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA**

4.  It is agreed, the applicable Guideline is contained in **United States Sentencing Guidelines Manual**, Chapter Two, **Part M,** entitled **Offenses Involving National Defense and Weapons of Mass Destruction**.  However, **Part M**, Section 5, entitled **Prohibited Financial Transactions and Exports, and Providing Material Support To Designated Foreign Terrorist Organizations** has adjacent guidelines § 2M5.1 & § 2M5.2, which we submit are in *pari materia*; and, ought to be viewed or considered together.  To do so, we believe, leads to a better understanding whether the more severe Base Offense Level (Level 26) provided for in each ought to be applied; or, the considerably lower Base Offense Level (Level 14) provided for in each –for less serious offense conduct– applies here.

5.  § 2M5.1, is entitled **Evasion of Export Controls; Financial Transactions with Countries Supporting International Terrorism.**  § 2M5.2 is entitled **Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License.**  For convenience, easy reference, and, comparison, the two (2) Guidelines are set out in the margin. [2]  (Both apply to 50 U.S.C. §1705; the offense of conviction in this case.)

---

[2]  **5. PROHIBITED FINANCIAL TRANSACTIONS AND EXPORTS, AND PROVIDING MATERIAL SUPPORT TO DESIGNATED FOREIGN TERRORIST ORGANIZATIONS**

Historical Note:  Effective November 1, 1987.  Amended effective November 1, 2002 (see Appendix C, amendment 637).

3

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

**§2M5.1.   Evasion of Export Controls; Financial Transactions with Countries Supporting International Terrorism**

(a)   Base Offense Level (Apply the greater):

(1)   **26**, if (A) national security controls or controls relating to the proliferation of nuclear, biological, or chemical weapons or materials were evaded; or (B) the offense involved a financial transaction with a country supporting international terrorism; or

(2)   **14**, otherwise.

**§2M5.2.   Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License**

(a)   Base Offense Level:

(1)   **26**, except as provided in subdivision (2) below;

(2)   **14**, if the offense involved only (A) non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed two, (B) ammunition for non-fully automatic small arms, and the number of rounds did not exceed 500, or (C) both.

Statutory Provisions:  18 U.S.C. § 554; 22 U.S.C. §§ 2778, 2780, 8512; 50 U.S.C. § 1705.

Application Notes:

1.   Under 22 U.S.C. § 2778, the President is authorized, through a licensing system administered by the Department of State, to control exports of defense articles and defense services that he deems critical to a security or foreign policy interest of the United States. The items subject to control constitute the United States Munitions List, which is set out in 22 C.F.R. Part 121.1. Included in this list are such things as military aircraft, helicopters, artillery, shells, missiles, rockets, bombs, vessels of war, explosives, military and space electronics, and certain firearms.

**The base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted.** [Emphasis supplied]. In the case of a violation during time of war or armed conflict, an upward departure may be warranted. See Chapter Five, Part K (Departures).

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

6. § 2M5.1 is the Guideline the prosecution and probation office ask the Court to apply. The Base Offense Level, **Level 26,** is to be applied if 'national security controls' were evaded**; Level 14**, otherwise. A very significant difference. The adjacent or following Guideline § 2M5.2 deals with Exportation of Arms, Munitions or Military Equipment or Services Without Required Validated Export License. Also, the Base Offense Level is **Level 26**; and **Level 14** otherwise (i.e. if the offense only involves two (2) non-fully automatic small arms or less than 500 rounds of ammunition for such non-fully automatic small arms). The necessary licenses were obtained here (and, the case does not involve the kind of small arms excepted in § 2M5.2) therefore, application of § 2M5.1 is the better choice. However, the Application Notes to § 2M5.2 are informative, insightful and, we submit, helpful. We think, they should be read in conjunction with § 2M5.1. Though set out in full in the margin, in particular, § 2M5.2, Application Note 1, paragraph 2, is especially worth noting. It provides:

*          *          *

---

2. In determining the sentence within the applicable guideline range, the court may consider the degree to which the violation threatened a security or foreign policy interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences. Where such factors are present in an extreme form, a departure from the guidelines may be warranted.

Historical Note: Effective November 1, 1987. Amended effective November 1, 1990 (see Appendix C, amendment 337); November 1, 2001 (see Appendix C, amendment 633); November 1, 2007 (see Appendix C, amendment 700); November 1, 2011 (see Appendix C, amendment 753).

5

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA**

> The base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted. In the case of a violation during time of war or armed conflict, an upward departure may be warranted. See Chapter Five, Part K (Departures).

We submit, the security of the United States was **not** at risk; the sales here were to friendly nations; and, the necessary government licenses/approvals were obtained.

7. Under the long, technical regulations covering defendants' debarment they were not permitted to *service,* or, to be indirectly involved in a transaction where the parts they brokered were for export. We can debate whether defendants truly understood that. However, we submit, but for the debarment the national security was not involved, and, we should not apply the significantly greater guideline called for in national security cases (**Level 26** vs. **Level 14**).

8. Moreover, we submit, the guidelines currently provided for in national security cases overstates the severity of the offense. Indeed, the Department of Justice, only recently, in its 2014 Annual Review and Recommendations to the Sentencing Commission said just that. (Letter dated July 29, 2014 to Honorable **Patti B. Saris**, Chair United States Sentencing Commission, pp. 18 -19, § K. Evasion of Export Controls, www.justice.gov/criminal/foia/docs/2014annual-letter-final-072814.pdf.) There the Department of Justice specifically asked the Sentencing Commission to—

6

**SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500**

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

    1) lower the top applicable guideline from **Level 26** to **Level 25** (where controls relating to nuclear, biological, or chemical weapons or materials were evaded);

    2) create a new middle tier at **Level 22** (if other national security controls were evaded); and,

    3) keep base offense **Level 14** in cases where none of the other factors apply.

In light of this, if this Court finds the debarment is an 'other national security control' –as urged by the United States Attorney— the starting Base Offense Level according to the Department of Justice's July 2014 letter to the Sentencing Commission should be no more than **Level 22**. Again, we submit, the debarment alone should not be viewed as an 'other national security control' and the Base Offense Level should be **Level 14.** Further, we submit, the cases cited by the prosecution in the Government's Sentencing Memorandum are inapposite; and, do not answer the question if on the unique facts of this case the defendants indeed violated a 'national security control.' The cases cited involved shipments to hostile nations, e.g. Iraq, Iran, Libya, Syria, and, Korea. Moreover, from what we can tell prior United States government licenses were not sought or obtained.

    9.    Regrettably, the Commission did not –this past year, at least– adopt the government's proposed changes. In light of *Booker*, of course, this Court's hands are no longer tied and we strongly urge the Court take into account the Department of

7

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

Justice's own latest thinking that the existing guidelines exaggerate or overstate the punishment for offense conduct covered by this guideline.  Though somewhat long, we submit, it is informative and worth reading in its entirety the DOJ's own recent analysis of these Guideline Sections, before the Court makes its own determination of where to score these defendants.  Again, though long, we quote from the Department's July 29, 2014 letter, starting at page 18:

> K. <u>Evasion of Export Controls</u>
>
> We recommend the Commission amend §2M5.1 (Evasion of Export Controls) in order to conform the guideline to the structure of the export control regime administered pursuant to the International Emergency Economic Powers Act (IEEPA)**, as well as to address problems created by the inflexibility of the current guideline applicable in IEEPA prosecutions.** [Emphasis supplied].
>
> The applicable guideline should reflect the range of conduct governed by IEEPA. The Commerce Control List (CCL) administered by the Department of Commerce regulates a range of munitions and dual use items of varying levels of sensitivity, the unlawful export of which may constitute a criminal violation of IEEPA. The CCL regulates many items that are highly sensitive, including items that can be used in nuclear weapons, and controls exports based on important national security and foreign policy interests associated with the sensitivity of the items or the destination countries or end users. The controls also apply to less sensitive items, end uses, and end users. These controls have undergone significant reform under the President's Export Reform Initiative to ensure that the controls are calibrated to the national security and foreign policy interests at stake. In addition, the Departments of State and Treasury also administer controls under the authority of IEEPA, criminal violations of which are captured by this guideline.
>
> **The current §2M5.1 does not take full account of this regulatory regime. The current guideline imposes a base offense level of 26 in nearly all cases. A base offense level of 14 is available in very limited instances (when national security controls or countries supporting international terrorism are not involved).** [Emphasis supplied].  For the most sensitive controls, a base offense level of 26 does not capture the seriousness of the

8

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

conduct. At the same time, the fact that the guideline does not account for the broad range of controls in the CCL has led to a widespread practice of district courts departing or varying from the guidelines. The courts have imposed disparate sentences that undermine the strong policy interest in uniform sentencing, often sentencing defendants at levels that reflect unwarranted departures from the base offense level of 26. This [Start of Page 19] practice weakens the credibility of the guideline in a range of potential cases, frustrating the government's ability to rely on the guideline to lead to an adequate sentence.

**A revised guideline could address these problems by providing a greater range of sentencing levels to better capture the range of export control violations to which the guideline applies. Rather than two base offense levels in the current guideline, we propose three possible base offense levels, with the addition of three specific offense characteristics for three types of aggravating factors. We propose a base offense level of 25 if controls relating to the proliferation of nuclear, biological, or chemical weapons or materials were evaded; a base offense level of 22 if other national security controls were evaded, or if the offense involved a financial transaction with a country supporting international terrorism; and a base offense level of 14 in cases where none of these factors applied.** [Emphasis supplied].

We further suggest three specific offense characteristics: a three level increase if the relevant item, technology or services relates to a WMD program, a weapon, or a military, missile or nuclear end use or end user; a three-level increase if the relevant commodity, technology, software, or service was intended for or facilitated or received by (A) a country, foreign entity or person that is sanctioned or otherwise designated by the Departments of Treasury, State, or Commerce for national security or foreign policy reasons; or (B) a country subject to a U.S. arms embargo; and a three-level increase if the transaction involves more than $100,000. An application note should specify in addition that if the base offense level of 25 applied for controls relating to nuclear, biological, or chemical weapons or materials, then the specific offense characteristic relating to WMD programs, weapons, or military, missile or nuclear end use or end users would not apply.

The resulting adjusted offense levels for the most serious offenses would be higher than under the current guideline, but **the graduated offense level structure would also allow for a lower offense level in cases without the aggravating factors. We believe that a guideline revised in this manner would provide judges with more useful advice and generally promote greater consistency in sentencing.** [Emphasis supplied].

9

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

The addition of a base offense level and the specific offense characteristics would further provide flexibility to allow tailored sentences for defendants who participate in a criminal network. Section 2M5.1 is most frequently used for IEEPA Iranian sanctions offenses and "dual-use" items to China offenses, and some of these networks may be relatively complex, involving actors of differing culpability.

We are continuing to evaluate whether a similar approach is justified as to §2M5.2 (Exportation of Arms, Munitions, or Military Equipment or Services Without Required Validated Export License), but the export controls subject to §2M5.2 are significantly different from the controls administered under the CCL. The sensitivity of items on the International Traffic in Arms Regulations (ITAR), violations of which implicate §2M5.2, tend to be more uniform. As part of the Export Reform Initiative, less sensitive items on the ITAR are being moved to the CCL. For these reasons, §2M5.2 does not present the same need for the proposed calibrated structure (and restructuring) we are proposing for §2M5.1.

10. **Russell Marshall** was at best a small –very small– airplane parts broker. His business was conducted via the Internet. Many of the parts are so-called *dual use;* that is, they can be used in both civilian and military aircraft. The charges before the court on their face might suggest **Marshall** was a major arms merchant, selling arms and munitions to enemies of the United States. That is not the case. Essentially, while on probation and under a debarment order based upon his prior conviction of a similar offense, he engaged in domestic transactions that sold airplane parts to US buyers who in turn sold the parts to others overseas. In each instance –as far as we know— **Marshall** in writing and orally advised his customers he could not engage in export and that the US buyer had to obtain –where necessary— the required United States government approvals. It is our understanding the necessary arms export licenses or permissions were in every case obtained. To be sure under the debarment regulations

10

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

**Marshall** was not to have participated in these transactions – even indirectly.  However, for Guidelines calculations purposes the issue is whether in any instance the 'national security' of the United States was compromised.  We think not.  The United States government's licensing or authorization of the transfer or export in each instance –despite **Marshall'**s involvement– takes this case out of the realm of a breach of national security.  Unfortunately, as now constituted –as the Department of Justice itself recognizes– the applicable guideline is too inflexible and rigid; which, apparently has led to many sentencing departures. (See DOJ letter of July 29, 2014, quoted above). **Russell Marshall** takes responsibility for his involvement.  However, it cannot in be said **Marshall's** conduct compromised, or, endangered, or implicated or was intended to compromise, endanger or implicate the national security of the United States.  **Marshall** did not engage in this activity with the kind of bad purpose we generally associate with this kind of offense.   However, his lack of sophistication and acumen in the strict requirements of this area make him not only a bad businessman, but a prime candidate to have stumbled the way he did.

      11.     In the end, no matter the ultimate sentence, **Russell Marshall** will be punished severely beyond any term of confinement imposed.  An extreme collateral –no, direct– consequence of this latest conviction is **Marshall's** 'banishment' or removal from the United States and separation from his family.  [See DE 48, 49 & 50; Stipulation, Order & Concurrence to Judicial Removal].  Indeed, the Supreme Court a few years ago

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA**

observed again in *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, at 1478, 176 L.Ed.2d 284 (2010), the human consequence of deportation/removal. The Court said:

> We too have previously recognized that " '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *St. Cyr*, 533 U. S., at 323 (quoting 3 Criminal Defense Techniques §§60A.01, 60A.02[2] (1999)).

Removal and separation from one's wife and children, whether by stipulation or not, is a severe, harsh, extreme punishment in and of itself. And, we submit, far worse than incarceration. **Russell Marshall** is a relatively unknown, small businessman. His conviction, removal and consequent impact on his family is a personal tragedy. The reporting of his conviction and sentence by the Department of Defense, the Department of Homeland Security, and, the Department of Justice will be another 'success'; but, we believe, will have no significant impact or deterrent effect on the kind of contractors and vendors the big sentence at **Level 26** suggests. The Department of Justice in its July 29, 2014 letter quoted from at length above got it right. "The current §2M5.1 does not take full account of this [complex, extensive] regulatory regime." In sum, the Department proposes a new **Level 25** for offenses involving proliferation of biological, nuclear or chemical weapons; a new **Level 22** for offenses where other national security controls were evaded; and, **Level 14** in cases where none of the other factors apply. Clearly, this is not a case involving biological, nuclear, or, chemical weapons. Thus, the issue is whether the debarment is a kind of 'other national security control;' which is where

12

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

we started this analysis. We think not. We submit ***the debarment is personal against Marshall** and his company.  It is not a 'national security control' of general or universal applicability.*  Because the sales were to friendly nations, and, government permissions were first obtained it cannot be said national security controls *were evaded*.  At best, we submit, this case falls into the category where 'none of the other factors apply' and the Base Offense Level calculation should commence at **Level 14.**

12. Counsel will have further and additional remarks to make at the time of sentence; now scheduled for April 24, 2015 at 10:00 a.m., in West Palm Beach.

**WHEREFORE**, Defendants **RUSSELL MARSHALL** and **UNIVERSAL INDUSTRIES LIMITED, INC.**, respectfully ask the Court to sentence **Russsell Marshall** consistent with the analysis contained herein.

**Universal Industries Limited, Inc.** is no longer operating, and, has no assets. **Marshall** is incarcerated and will be removed from the United States.  For these reasons, we suggest, a sentence of one-day corporate probation will save the Probation Office the time, expense, and, paperwork associated with supervising a defunct, non-functioning, non-existent entity.

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

Dated: April 8, 2015
Miami, Florida

Respectfully submitted,

**LEONARD A. SANDS, Esquire (0257583)**
leonardsands@att.net
**SANDS & MOSKOWITZ, P.A.**
Law Offices at Brickell Bay – Suite A-1
2333 Brickell Avenue
Miami, Florida  33131
Telephone: (305) 285-1500
Facsimile:  (305) 285-0699
Attorneys for Defendant **RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC.**

/ s / **Leonard A. Sands**, Esquire
_____
**LEONARD A. SANDS**, Esquire

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically via **CM/ECF** on April 8, 2015, upon all counsel or parties of record on the attached service list.

/ s / **Leonard A. Sands**, Esquire
_____
**LEONARD A. SANDS**, Esquire

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

# SERVICE LIST

## CASE NO: l4-80200-CR-MARRA

**Hon. Michael Walleisa**, Esquire
**United States Attorney's Office**
500 East Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
Telephone: (305) 961-9325
E-mail: Michael.Walleisa@usdoj.gov


**Edward L. Cooley**
Senior U.S. Probation Officer
United States Courthouse
101 S. U.S. Highway 1, Suite 1094
Fort Pierce, Fl 34950
Telephone:  (772)-467-2367
Edward_Cooley@flsp.uscourts.gov