UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  14-80200-CR-MARRA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RUSSELL H. MARSHALL,

        Defendant,
_____/


DEFENDANT RUSSELL MARSHALL &
UNIVERSAL INDUSTRIES LIMITED, INC.'s
OBJECTIONS TO PRESENTENCE REPORT

        Defendants **Russell H. Marshall**, and, **Universal Industries Limited, Inc.,** pursuant to *United States Sentencing Guidelines Manual* (USSG) §§ 6A1.2 & 6A1.3, F.R.Cr.P. Rules 32 (d), (e)(2) & (f), and, the Fifth and Sixth Amendments to the *United States Constitution*, respectfully files these their Objections to the Presentence Report (PSR) -- and, Request an Alternative Sentence consistent with the objections and suggestions made herein.

        In explanation whereof, **Russell Marshall** and **Universal** state:

        **I.**        **Objection to Recommended Offense Level Computation**

        1.        As is now well known,  since *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Sentencing Guidelines are *advisory* only, and, the federal sentencing process now follows a three (3) step approach.  (See e.g. F.R.Cr.P, Rule 11

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

(M), amended December 1, 2007).  That is, a sentencing Court is to –1) resolve disputed guideline issues and determine the *advisory guideline range;* 2) address any factors that may warrant a departure; and, 3) consider any 18 U.S.C. § 3553(a) factors that may affect the sentence imposed.

   2. As to the first determination the Court must make, we object to the PSR setting the *Base Offense Level* at **Level 26** under § 2M5.1(a)(1), and, making that the starting point for the *advisory guideline range.*  See **PSR Offense Level Computation,** pp. 10 - 11.  Rather, we believe, a *Base Offense Level* of **Level 14** under § 2M5.1(a)(2) is the appropriate starting point – for the reasons contained herein and more completely explained in the analysis contained in Defendants' separate Sentencing Memorandum contemporaneously filed with these objections.  With a reduction for **Marshall's** complete and timely acceptance of responsibility, the *Total Offense Level* would be **Level 12** (**Level 14** less 2 levels for Acceptance of Responsibility).  Because this is a second offense & occurred while on supervision, this places **Marshall** in Criminal History Category II, with an *advisory guideline range* of 12 to 18 months, within **Zone C** of the **Sentencing Table**.

   3. If the Court determines the debarment order entered as a result of the prior offense (Case No. 11-80058-CR-MARRA) constitutes an evasion of 'national security controls' the *Base Offense Level* at worst should, we submit, be at (a proposed new) **Level 22** not **Level 26;** as is now urged by the Department of Justice itself in its

2

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

2014 Annual Report to the United States Sentencing Commission, quoted extensively in our contemporaneous Sentencing Memorandum.  See Letter dated July 29, 2014 to Honorable **Patti B. Saris**, Chair United States Sentencing Commission, pp. 18 -19, § K. Evasion of Export Controls, www.justice.gov/criminal/foia/docs/2014annual-letter-final-072814.pdf).   There the Department of Justice specifically asked the Sentencing Commission to—

1) lower the top applicable guideline from **Level 26** to **Level 25** (where controls relating to nuclear, biological, or chemical weapons or materials were evaded);

2) create a new middle tier at **Level 22** (if other national security controls were evaded); and,

3) keep base offense **Level 14** in cases where none of the other factors apply.

4. Should the Court -- 1) believe it appropriate to view the debarment order as another 'national security control;' and, 2) apply the DOJ's own recommendation, *supra,* that **Level 22** should be the *Base Offense Level*, with Acceptance of Responsibility the Total Offense Level is **Level 19** (i.e**. Level 22** less 3 levels for Acceptance of Responsibility).  In Criminal History Category II, the *advisory guideline range* is 33 - 41 months.

5. Should the Court  – 1) believe it appropriate to view the debarment order in and of itself as another 'national security control;' and, 2) **not** apply the DOJ's own recommendation, *supra,* that **Level 22** is the appropriate *Base Offense Level*, and,

3

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

start with **Level 26** (as **§** 2M5.1(a)(1) now provides & as suggested by the Probation Office), with Acceptance of Responsibility the Total Offense Level is **Level 23** (i.e**. Level 26** less 3 levels for Acceptance of Responsibility).  In Criminal History Category II, the *advisory guideline range* is 51 -63 months.

    6. Thus, depending upon whether the Court finds – a) the debarment order is in and of itself a 'national security control;' and, b) credits and looks to the Department of Justice's own very recent analysis and recommendations in these kinds of cases, the suggested *advisory* Sentencing Range available is extremely broad.  That is, on the low side there is justification to sentence **Marshall** to as low as 12 – 18 months, and, justification to sentence him as high as 51 – 63 months; with an equally justifiable mid-range sentence of 33 - 41 months.  In addition to any sentence imposed, the Court needs to also impose a sentence for violation of probation.  Pursuant to USSG § 7B1.3(f), it is the policy of the Commission that sentence be ordered to be served consecutively.  However, again, in light of *Booker* the Court has broad discretion to impose a sentence that is fair and not greater than necessary.  In light of the nature of the offense conduct, approval of the subject sales by our government to friendly nations, defendant's acceptance of responsibility, his ultimate removal from the United States and break up of his family, we urge the court to exercise its discretion at the very low end of any permissible sentencing range and return **Russell Marshall** to Canada as soon as possible.

4

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

7.      We would point out that should the Court find the starting point is indeed **Level 14**, as we suggest, with *acceptance of responsibility* that places the sentence within **Zone C,** making **Marshall** eligible for a so-called 'Split Sentence.'  That is, **Marshall** could serve half of the sentence imposed in a custodial type setting, and, half in 'community confinement' or 'home detention.'  USSG Manual § 5C1.1(d).  Also, it should be recalled, **Marshall** has been in custody since his arrest on these new charges on August 19, 2014; and, will have been in custody a little over eight (8) months when he appears for sentence on April 24, 2015.

8.      Clearly, the government and probation office suggest the debarment order alone makes this a case one involving a 'national security control.'  Again, we strongly believe otherwise.  Moreover, the Department of Justice itself in its very recent publicly available recommendation to the Sentencing Commission recognizes these kinds of cases cover a wide range of conduct.  Moreover, as currently constituted the applicable Guideline –the DOJ itself recognizes– is too inflexible and has resulted in too many disparities, downward departures and variances, not in keeping with the sentencing goal of consistency and predictability in sentencing.  Again, at this juncture we would strongly urge the court fashion a sentence that will get **Marshall** on his way to Canada as soon as possible.

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

## II.   Factors That May Warrant Downward Departure

9.   After determining the applicable Guideline Range, a sentencing Court is to consider if there are factors that warrant a departure from the *advisory guideline range*.  We believe there are.  The Probation Office correctly alerts the Court (PSR p. 20, para. 100) to § 2M5.1, Application Note 2, which provides:

> 2. In determining the sentence within the applicable guideline range, the court may consider the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences. Where such factors are present in an extreme form, a departure from the guidelines may be warranted.  See Chapter Five, Part K (Departures).

Conversely, we suggest in our separate Defendant's Sentencing Memorandum that the following, or, adjacent Guideline § 2M5.2 should be read *in pari materia* with § 2M5.1**,** and, especially Application Note 1, paragraph 2, which expresses the same idea as the above; but, in reverse.  It provides:

*             *             *

> **The base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States.  In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted.** [Emphasis supplied]. In the case of a violation during time of war or armed conflict, an upward departure may be warranted.  See Chapter Five, Part K (Departures).

These two (2) Guidelines both assume the offense conduct covered by each was harmful to a security or foreign policy interest of the United States; which is the usual or customary case.  But, if as here, the offense conduct was not, a downward departure may be warranted.  We submit, the items involved here were not contraband or dangerous *per*

6

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA**

*se*, were sold to friendly nations, and, United States government authorizations were obtained.  There is no suggestion or claim any sophistication was involved.  Indeed, the Probation Office does not suggest there be any departures; either upward or downward.

      10.    Not as an excuse, but to keep this in context, we cannot emphasize strongly enough that – ***but for the debarment order there would be no violation or offense.***  For that reason, a downward departure is, we submit, warranted.  Moreover, in light of the Department of Justice's own most recent thinking in these offenses, **Level 26** as the starting point –or, *Base Offense Level*– is just too high.  Even in cases involving nuclear, biological and/or chemical weapons, the Department suggests the starting point should be set lower at **Level 25;** not **Level 26.**  Further, the Department would create a new **Level 22** if national security controls were evaded; and, **Level 14** otherwise.  Therefore, just based upon the Department of Justice's own most recent discussion of § 2M5.1 in its 2014 Annual Report to the Sentencing Commission, discussed at length and quoted in full in our separate Sentencing Memorandum, a downward departure is called for and warranted.  See [www.justice.gov/criminal/foia/docs/2014annual-letter-final-072814.pdf](www.justice.gov/criminal/foia/docs/2014annual-letter-final-072814.pdf)).  USSG § 5K2.0, we submit, would allow for a downward departure from here **Level 26** to **Level 14** because the language in § 2M5.1 fails to address a circumstance --

> " . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."  USSG § 5K2.0.

7

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

That, we think, is the ultimate take away from the Department of Justice's 2014 Annual Review and Recommendations.

11.     The debarment order was personal to **Russell Marshall** and **Universal.** Its purpose was to punish them for a period of time.  It was not of general application, and, therefore was not and should not be viewed in and of itself as 'a national security control' as urged by the prosecution.  This is not idle semantics.  The resolution of this issue has significant, real consequences for **Russell Marshall** and his family in terms of the ultimate sentence this Court may impose.  This case is unique on its facts.  We could not find another just like it.  We submit, despite the offense conduct violated a debarment order while on probation, that alone does not elevate or make the case one of national security.  It is too facile to say that since the offense occurred while under supervision, the conduct therefor involves the national security –and, deserves a harsher punishment.   Again, if not for the debarment order there would be no offense; and, we would not now be before the Court.

　　　　　**III.**　　**Sentencing Factors Under 18 U.S.C. § 3553 (a)**

　　　　　**A.**　　**Sentence Must Be Reasonable**

12.     Lastly, the Court is to consider all of the sentencing factors of 18 U.S.C. § 3553(a) and impose a sentence which is reasonable – but, not greater than

8

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA**

necessary to achieve the sentencing objectives set forth in § 3553(a).  We believe there are reasons why this Court should consider a sentence below the *advisory* g*uideline range.*

13.  As a Canadian citizen, a collateral consequence of **Russsell Marshall'**s conviction will be **Marshall's** permanent removal from the United States. Banishment –especially considering his family circumstances– is a brutally harsh punishment in light of the offense conduct.  Though legally characterized as a 'collateral consequence,' deportation or removal is actually a more severe, more harsh, direct consequence of the plea and sentence than even incarceration.  Indeed, the certainty of removal at the end of any sentence imposed here is a given.  Through his stipulation, consent, and, the Court's Order [DE 48, 49 & 50] **Marshall** must leave this country and his wife and three (3) children.  That circumstance should be weighed in fashioning a punishment appropriate to the offense conduct, the harm or intended harm, and, likelihood of future unlawful conduct.  **Marshall** is fifty-three (53) and has lived in the United States for twenty (20) years.  In the end, the Court is required to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

14.  District courts are **not** to treat the Guidelines as presumptively reasonable.  E.g. *United States v. Hunt*, 459 F. 3d 1180 (11th Cir.2006)(explaining courts "may determine, on a case-by-case basis the weight to give the Guidelines, so long as that

9

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

determination is made with reference to the remaining §3553(a) factors that the court must also consider in calculating the defendant's sentence"). In this case, the Department of Justice's July 2014 Report & Recommendation to the Sentencing Commission speaks loudly and forcefully to the unreasonableness of § 2M5.1's harsh choice between **Level 26** vs**. Level 14,** as the starting point for setting an applicable *Base Offense Level.* In *Hunt* the court explained there are "many instances where the Guidelines range will not yield a reasonable sentence." *Id.* at 1184.   That, we submit, is the case here.

### B.     History & Characteristics of Defendant

15.    **Russell Marshall** is a 53 year old native of Bridgetown, Barbados. He is the son of **Willoughby** and **Yvonne Marshall**, the brother of **Joseph Marshall** and **Anne Payne**, the husband of **Cheryl Marshall** for the past 27 years and the father of **Jelani, Gyasi** and **Rashida**, ages 16, 21 and 25, respectively.   His only prior record is the conviction before this Court; for which the debarment order central to the sentencing calculus in this case was issued.

16.    In 1968, when **Marshall** was 7 years old, his mother accepted a position as a housekeeper in Kingston, Ontario, Canada.   The family's financial conditions in Barbados made her move necessary.  A few years later, **Marshall**'s father joined his mother in Canada and enrolled in a Xerox technical repair program.  Between the ages of 7 and 13, **Marshall** was cared for by his paternal grandmother and his

10

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

siblings were cared for by his maternal grandmother –all in Barbados. Financial conditions were modest and he missed his parents, since they could only afford to return to Barbados to visit about two or three times during those years. However, the parents sent for their three (3) children in 1974.

    17. Life in Scarborough, a suburb of Toronto, was an adjustment. **Russell Marshall** continued his public school education and the family's finances improved somewhat**. Marshall** excelled in high school and actively participated on its sports teams. **Marshall** also worked part-time as a cook and a waiter. He graduated in 1980, the same year his parents bought their first house. By then, **Marshall's** mother was working as an extended care nurse (she has been with the same employer for more than 30 years) and his father was repairing and later selling Xerox equipment. (He is now in his 70's, a survivor of prostate cancer and retired). **Marshall's** parents have now been married for 50+ years and continue to live in Canada.

    18. After high school, **Marshall** attended Seneca College, near Scarborough, and studied electrical engineering. He took public transportation to school from his parents home. He paid his own way by making pizzas, selling vacuum cleaners and working as a DJ part-time. **Marshall** left school at age 22. He bought his first automobile at age 24 and moved from his parents' home within the following year.

    19. In 1984, **Marshall** was hired to assemble satellite receivers and in three (3) years rose from the assembly line to managing the company's assembly line and

11

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

inventory. Unfortunately, the company closed in 1988. It was during those years **Marshall** met and married his wife. They were married in Toronto on August 20, 1988 and, after 27 years continue to have a stable marriage.

20. **Russell** and **Cheryl Marshall** became parents when **Rashida** was born in 1989. That year, **Marshall** repaired underground water pumps and hated the job. **Cheryl** worked days as a licensed practical nurse and attended school at night. However, from 1989 until 1995, **Marshall** worked as a purchasing agent utilizing his electronics background for Atlantis Aerospace. Atlantis manufactured flight simulators for commercial and military aircraft; which provided him a background to go forward in his career.

21. In 1995 **Marshall's** wife talked him into moving to South Florida, She hated the Canadian cold weather. (She is a native of Jamaica). She wanted to attend nursing school in the United States. They rented a 2/2 apartment in Plantation, Florida; and, in April 1995 **Marshall** began to send out resumes. He found work with Murano Brothers in Deerfield Beach as a purchasing agent of high-end electrical instrumentation equipment. It was through Moreno he met **Joseph Lucia** and **Frank Carriere** –his partners in **Universal**– and got the idea to go into business for himself.

22. In 2000 **Marshall** and his family moved into their new home in Loxahatchee. The children were then 2, 7 and 11. **Marshall** worked at Moreno Brothers during the day and tried to get **Universal** off the ground at night, working from his

SANDS & MOSKOWITZ, P.A. • LAW OFFICES AT BRICKELL BAY • 2333 BRICKELL AVENUE, SUITE A-1 • MIAMI, FLORIDA 33129-2497 • TEL. (305) 285-1500

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

bedroom. **Joseph Lucia** provided the money for the office furniture and equipment and orders started out slow and small. However, within eight (8) months **Universal** was doing business with the government and **Lucia** recouped his investment. **Marshall** left Moreno and **Universal** was officially incorporated in 2002. Since then, **Universal** has remained **Marshall's** only employment.

23.    This offense occurred while **Marshall** was on Probation for a similar offense and under a debarment order proscribing even indirect involvement in sales requiring government export authorizations. Here **Marshall's** US customers obtained the required government permissions and authorizations. **Marshall**'s wife and children are citizens of the United States and their lives are here. **Marshall** was in the process of becoming a citizen when his first case arose. **Marshall** has been indispensable to both his business and family. His business has now closed. It is finished. His removal will impact his family in ways we can only imagine. It has already had a considerable impact on Mrs. Marshall's ability to support herself and the two (2) younger children. Pursuant to § 5H1.6, **Marshall's** "Family Ties and Responsibilities" are very real and we ask the Court to consider them when deciding on a "reasonable" but not greater than necessary sentence.

24.    Counsel and **Russell Marshall** thank the Court for considering our objections to the PSR, our request for a downward departure and/or alternative sentence, the letters we will be submitting separately from family, friends and colleagues of

13

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

**Russell Marshall,** and, the separate Sentencing Memorandum we have filed contemporaneously herewith.

### IV.   Conclusion

25.   Counsel on **Russell Marshall's** behalf asks this Court to determine **Marshall's** applicable *Base Offense Level* is **Level 14**, less 2 levels for Acceptance of Responsibility , or, **Level 12**, Criminal History Category II,  with an *advisory guideline range* of 12 – 18 month; our request for a downward departure; and, finally, the sentencing factors of 18 U.S.C. §3553.  We submit, under a totality of the circumstances, a split sentence (allowed for sentences in **Zone C**) is a "reasonable" sentence in this case. Such a sentence will give **Russell Marshall** the opportunity to be promptly removed from the United States and to find employment in Canada to assist his wife meet her family's financial obligations.

26.   **Universal Industries Limited, Inc.** is no longer operating, and, has no assets.  **Marshall** is incarcerated and will be removed from the United States.  For these reasons, we suggest, a sentence of one-day corporate probation will save the Probation Office the time, expense, and, paperwork associated with supervising a defunct, non-functioning, non-existent entity.

27.   Counsel will have further and additional remarks to make at the time of sentencing.

14

UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC
CASE NO.: l4-80200-CR-MARRA

Dated: April 8, 2015
Miami, Florida

Respectfully submitted,

**LEONARD A. SANDS**, Esquire
(Fla. 0257583)
leonardsands@att.net
**SANDS & MOSKOWITZ, P.A.**
Law Offices at Brickell Bay
2333 Brickell Avenue, Suite A-1
Miami, Florida  33129-2497
Tel: (305) 285-1500/Fax: (305) 285-0699
Counsel for **RUSSELL H. MARSHALL**

/s**/**  **Leonard A. Sands, Esquire**
_____
**LEONARD A. SANDS**, Esquire

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served **via CM/ECF** on April 8, 2015 upon all counsel or parties of record on the attached service list.

/s/  **Leonard A. Sands, Esquire**
_____
**LEONARD A. SANDS**, Esquire

**UNITED STATES v. RUSSELL MARSHALL & UNIVERSAL INDUSTRIES LIMITED, INC**
**CASE NO.: l4-80200-CR-MARRA**

# SERVICE LIST

## CASE NO: l4-80200-CR-MARRA

**Hon. Michael Walleisa**, Esquire
**United States Attorney's Office**
500 East Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
Telephone: (305) 961-9325
E-mail: Michael.Walleisa@usdoj.gov

**Edward L. Cooley**
Senior United States Probation Officer
101 S. U.S. Highway 1, Suite 1094
Fort Pierce, Fl 34950
Telephone:  (772)-467-2367
E-mail:  Edward_Cooley@flsp.uscourts.gov